Good morning, Your Honors. May it please the Court. I'm Joseph Weisman on behalf of the appellant Timothy Truong. Your Honors, as we indicated in our opening brief, the issue that we have in this particular case is the reasonableness of the sentence that was imposed. As the Court knows, the probation officer had recommended a midterm of the guideline range of 78 months. Notwithstanding that, the district court imposed the maximum under the law, which was 120 months. Our view, as we indicate in the brief, is that the judge, the district court judge, made an initial error by using the $500 per card, if you will, per gift card floor that is part of the amendments to the guideline. It was Amendment 596. And by the way, Your Honors, if I may reserve two minutes for rebuttal, our view is that in light of the facts of this case, where there was, in fact, a known loss, the probation officer, in his report, determined that the loss was more reasonably calculated at $35 per card, whereas Wal-Mart, when they submitted their loss analysis to the In light of that, in light of the fact that there was a clear loss, the district court should not have applied the $500 per card floor as the Guideline Amendment calls for. As we all know, the Guidelines are now advisory, and there is nothing mandatory that would dictate that the district court apply the $500 card limit. That in and of itself --" Sotomayor, is your argument that the district court did not know that it had discretion or that it exercised its discretion improperly? Your Honor, it appears that the district court did not exercise the discretion in deciding whether the $500 card floor should be applied or, for that matter, the actual loss that was identifiable. We raise that in our sentencing memorandum. I believe the government responded in their sentencing memorandum. So that issue was before the district court judge. No, no. I'm really just trying to clarify whether you're saying that the district court didn't know it had any discretion, that it just was blind to the possibility that it could have given a lower sentence, or is your argument instead just that it should have given a lower sentence, it knew that it could, but it just didn't do the right thing? I mean, phrase it that way, Your Honor. It's unclear. I don't know the answer to that. I think the – I think a reading of the amendments may suggest that there was no discretion by the district court to apply any other number than the $500. But having said that, I think that the court, again, faced with the reality of what was before the court in the record, applying the $500 limit, or floor, rather, was unreasonable in this particular case. Had there not been a loss amount that was identifiable, then I think a different situation would have occurred. But by making that application of the $500 per card floor, you have a guideline level that bumps up 16 levels, and that was a predicate for which the court, or at least for the probation officer's determination of a level 78. Notwithstanding that, the district court goes forward and imposes the 120-month sentence. And I may address that for a moment. The ---- But there were, in fact, thousands and thousands of these cards. That is correct. And they have, right? There were thousands of cards that Mr. Trunk did have. However, in – notwithstanding that, the probation officer, I think appropriately, calculated that the more appropriate number should be $35. But then you have that contrasted with the actual loss by Walmart. So you had some definable loss that the district court, in my view, should have used as a mark. Well, Walmart was not the only entity whose cards were in his possession, correct? That is correct, Your Honor. There were other cards involved. But the bulk of the cards were Walmart cards. And, frankly, the Walmart folks were the only victims that provided information as to what their loss was. But, again, the probation officer, I think, did a reasonable job in calculating the aggregate loss at $35 a card, which was substantially different than, obviously, the $500 a card. So with that imposition of that level, we had a guideline level that was higher than it should have been. And notwithstanding that, the district court decides to go beyond that and impose a 120-month sentence on Mr. Trunk. Now, I understand your argument on the $500 loss. It was that the court went astray in saying these were access devices, and that's what caused the $500 valuation. I didn't get from your brief an argument that even if they were access devices, the court should not have calculated the loss at $500. Your Honor, our focus on that issue was, in fact, that the gift cards, because of the nature of that card, is not, in fact, an access device. But even if it were to be an access device, then I believe that in this particular situation, the court shouldn't have applied the $500 floor. But with respect to whether these cards are access devices, I think the salient distinguishing feature is that they really are akin to cash. It's like plastic cash. Our view is that it doesn't, it doesn't, an access, pardon me, a gift card does not access an account in which funds are transferred under the, the dearth of actual case law. There's not a lot of case laws that work that way. In the plea of guilty, your client agreed that those were access devices, or at least that's how I read the case. The government's position, your Honor, the government's position is, in fact, that. I think, I think an argument could be made that the Patterson case cited by the government would preclude the argument that they are not access devices by virtue of his plea. I'm mindful of that, that that's a potential problem. But even if this Court were to say, in fact, the, the gift cards are access devices, and Patterson precludes the defendant, or the appellate, rather, from arguing around that, again, we go back to whether or not the $500 floor was an appropriate, was an appropriate amount to, to be used for, for the loss calculation. And if I may move to simply the unreasonableness of the overarching, of the overall sentence, our view is that the, the district court did not go through the 3553 factors. I think the Court simply addressed the issue of Mr. Trung's criminal history, which, I'll readily concede, was rather long. Nevertheless, the probation officer took that in consideration in the criminal history score, which the, which was scored out as criminal history score 4. And I think the guidelines, in using that calculation of criminal history score 4, I think the guidelines adequately took in consideration Mr. Trung's rather interesting background. And so I, I don't believe it was appropriate in abuse of the district court's discretion to go from a 78-month recommended disposition to 120 months based upon what appeared to be in the record the judge's concern and displeasure with Mr. Trung's background and his history. All of them. Kagan. Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Good morning, Your Honors. May it please the Court. My name is Matthew Siegel. I represent the United States in this case. Before I go into the argument that I prepared, I want to answer, Your Honor, Judge Graber's question about whether there was Kimbrough error in this case. That is, whether the Court misunderstood whether it had discretion. And I think there's, there's no, there's nothing in the record to suggest that the district court in this case disregarded the, it's, the fact that it had discretion to give an outside-of-guideline sentence. What the district court said when it personally addressed the defendant in the excerpts of record, I think at, at 125 to 126, the court said, your, your attorneys have made excellent arguments, but they, and now I'm paraphrasing, but in, in substance, the, the worst argument is you. Your criminal history is astounding. It's astounding. And it's, it's quite clear in this case that the district court did understand that it had discretion because the district court exercised that discretion just in the direction that the defendant did not want. This Court's law is that in the, in the mine run of cases, generally a, a guideline sentence will suffice. But this is not the mine run of cases. This is what the district court called a, a very unique case with a defendant with an astounding criminal history. The district court in this case said that the defendant's criminal history was one of the most remarkable I've ever seen in terms of this type of crime. The court said it was amazing. And indeed, you know, it's, it was hard to figure out the criminal history, but this turns out it was the sixth time that a Federal judge issued an order sending this defendant to prison in a card case. He had the, the two Federal criminal convictions for conduct involving cards, and he had one supervised release revocation for essentially absconding from supervision in the first case. And then in the second Federal case that he picked up while he was on supervised release in the first criminal case, he had a, a more cards and then two supervised release revocations. Again, the second one for more access device fraud, this time in, in Utah. Weren't, weren't all six of those reflected in the criminal history calculation? No. Not the revocations. The, the convictions, yes. But he did not get additional scoring by virtue of the fact that he had a term of supervised release revocations. He also did not get, he only got a point from the State court conviction, convictions plural in Reno from 1992, because he didn't show up for sentencing and we don't know what, what sentence he would have gotten. He also did not get a point from Utah because he failed to appear there in January 2003. And it's worth noting that it, it appears that in 2003, the defendant had been, before arrested in Utah, had been living on the lam for, for years. I thought the court also relied on the potential danger to others from his car crash. Yes. That as he would do anything to get away and would hurt other people and that would not have been reflected in the criminal history score. Not in the criminal history score. And, and indeed this was the third time that the defendant was arrested with kind of a vehicle in Nebraska, in New Jersey, and then in Yuba City. He kind of had a card, cards and merchandise in his car when he was arrested. And in this case, he takes off in the parking lot, pedestrians are jumping out of the way, he eventually gets out, I guess, into traffic where he's weaving in and out at 70 miles an hour, causes an accident between two cars, sends, collides with a Ford F-150, which I guess is a large vehicle, concussion, bruises, hospital. Would do anything. I, I want to, so I think there was an ample justification for the, for, for the variance ordered in this case, because as the district court found, this guy is a certainty of recidivism, not just a likelihood. And the, the community needed to be protected from the crimes that absolutely were going to happen when this guy's released. I want to address quickly whether these were access devices. Your Honor, Judge Canby, in the Nguyen case, wrote on whether blank credit cards were access devices in, and indeed they are, because the card can be used in combination with a card number to access accounts. And there's ample evidence in this record, besides the defendant's plea, that gift cards are essentially an ATM card, but with a store instead of a bank. Counsel, what's the exact language to which he pled? Your Honor, the plea colloquy, it was an open plea. So I can't, I can't give the court a plea agreement. But in the excerpts of record at page 19, the factual basis that was read by the government, at 19, and then the factual basis goes on to the next page, the elements are, first, the defendant knowingly possessed a total of at least 15 unauthorized access devices. And in the information that was filed in this case, it says, to wit, about a thousand store gift cards. And then the defendant knew they were unauthorized, et cetera. And in the factual basis that was read, the only access devices referred to were, indeed, the store gift cards. And if you study paragraph 3 of the PSR and pages 2 and 3 of the complaint filed in this case, these are unique numbered magnetic strip cards that access an account balance stored on a remote server. That's what they are. Yeah. It's on page 22 that counsel says at the time he possessed more than 15 access devices. And, Your Honors, the – besides the fact that there was a well-justified upward deviation from the sentencing guidelines in this case, there's also the fact that the sentencing guidelines could easily have been calculated at four levels higher, because the guidelines calculation didn't account for the 10,000 gift cards that the defendant was arrested with in New Jersey. And under Neubert should have been part of the – of his guidelines range and would have put him then, assuming criminal history 4, at 100 to 125 months. It's also true at paragraph 67 of the PSR, the probation officer opined that this defendant was more appropriately a criminal history category 6, again, putting him either over 120 months or not too far from it. So I believe there was no procedural error in this case. The $500 minimum was correctly applied. The court understood it had discretion. It exercised its discretion in an entirely appropriate way based on the individualized facts of this case. And if the court has no further questions, I will not use all my time. Thank you. Thank you, counsel. Mr. Weisman, you have some time left. I have a minute or so, Your Honor. Do I have any time, Your Honor? Yes, you have a minute and 43 seconds. Oh, very well. Thank you. I'll just – I'll be brief, Your Honor. I think that what Mr. Siegel pointed to is really one of the key focuses in this case, and that is the district court judge said that Mr. Trung, my client, was his worst argument, the point being is that the district court focused merely on his criminal history score, in my view, did not articulate what the court has to do with the 3553 factors. The court – Well, didn't the court also rely on the fact that he was perfectly willing to injure other people, to flee from the police, and that that would not have been reflected in his criminal history score? Your Honor, the court did address the fact that he did flee. But I think that that was adequately taken into consideration by the probation officer in the probation report. That was not something that was omitted from the report. It was addressed. And I think in the court's not bound by that report. It's a recommendation, right? It is merely the recommendation. But I – but even having addressed that issue, I don't think the court adequately addressed the other – the other 3553 factors. And I would just cite my – in closing, I'll simply say that what the district court did here was far short of what judge Canby addressed in the Makuza-Vaquez case in June of this year, where what the district court – the articulation in that particular case of the 3553 factors was sufficient for this court to uphold that part of the sentence. However, in this particular case, I don't believe the district court judge even met the minimum criteria of what Judge Canby addressed in the Vaquez case. So with that, if there's any other questions, I'll submit. I believe we have no further questions. Thank you very much. We appreciate your arguments. And U.S. v. Truong is submitted.
judges: Fletcher B. , Canby, Graber